RELIANCE NATIONAL INSURANCE COMPANY *VS.* SEARS,
ROEBUCK & CO., INC., & another.[1]

No. 99-P-1861.

Norfolk. January 22, 2003. - July 30, 2003.

Present: DOERFER, KASS, & McHUGH, JJ.

*Insurance,* Construction of policy, Legal malpractice insurance. *Contract,* Insurance. *Words,* "Professional service."

A Superior Court judge properly concluded that the activity involved in a lawyer's billing a client for legal services did not constitute the rendering of professional services; consequently, an insurer was not liable under its lawyers' professional liability policy to defend the lawyer on a charge of fraudulent billing. [647-649]

Costs for photocopies, deposition transcripts, witness fees, filing fees, and constable fees were subject to recovery by an insurer under G. L. c. 261, § 1, and Mass.R.Civ.P. 54(d) as a matter of course in a proceeding declaring the insurer not liable under a professional liability policy. [649]

CIVIL ACTION commenced in the Superior Court Department on April 30, 1997.

The case was heard by *Elizabeth Butler,* J., on a motion for summary judgment.

*Eric M. Chodkowski* for the defendants.

*Richard J. Riley* for the plaintiff.

KASS, J. By complaint for a declaratory judgment as to its liability under a legal malpractice insurance policy, Reliance National Insurance Company (Reliance) put the question: Is the activity involved in billing a client for legal services within the compass of professional services covered by a malpractice insurance policy? A judge of the Superior Court decided it was not and declared that Reliance was not liable under the policy. We affirm.

---

[1]Goldstone & Sudalter, P.C.

1. *Facts.* The following undisputed facts were developed on a motion for summary judgment brought by the defendant Reliance. In 1991, Daniel W. Goldstone organized a corporation named Goldstone & Sudalter, P.C., of which he was the sole officer and shareholder. He did so for the purpose of buying the law practice of a deceased lawyer, Eldon Sudalter, who had specialized in collection cases. Sears, Roebuck & Co., Inc. (Sears), had been significant in Sudalter's book of business but, Goldstone noticed, Sears had stopped sending cases to the law firm. The reason, a Sears account manager explained to Goldstone, was that the Sudalter office had not closed a case in years. Goldstone began to prowl through thousands of Sears files that were in dead storage in the basement of the old Sudalter, and now Goldstone & Sudalter, P.C., law office. He charged Sears for checking out the closed files and projected time and costs that Sudalter may have expended. Goldstone kept sending bills to Sears that greatly exceeded anything he collected from debtors of Sears. For its part, Sears kept paying Goldstone's bills until someone at Sears began to wonder what it all meant.

Now awakened, Sears brought an action in the United States District Court for an accounting and to recover for fraudulent billing by Goldstone. The District Court judge, who heard the case on a summary judgment motion, concluded that Goldstone had bilked Sears to the tune of $833,409 and ordered the entry of judgment for that amount, and, as Sears had made a claim under G. L. c. 93A, added $112,000 to the judgment on account of legal costs and attorneys' fees incurred by Sears. That judgment was affirmed in *Sears, Roebuck & Co.* v. *Goldstone & Sudalter, P.C.*, 128 F.3d 10 (1st Cir. 1997), albeit not on grounds of misrepresentation but because Goldstone had failed to adduce any evidence tending to prove that he was owed fees in respect of the 15,000 or so closed files.

Goldstone, at the time of the improper billings, carried a lawyers' professional liability insurance policy with Reliance. Goldstone looked to Reliance for indemnity under the policy, and Reliance apprehended that Sears might look to the policy as a third-party beneficiary. Under the policy, Reliance covers claims "caused by any act, error, or omission of the insured

. . . which arise[s] out of the rendering or failure to render *professional services* for others in the insured's capacity *as a lawyer*" (emphasis supplied). Reliance brought a complaint in Superior Court for a declaratory judgment that it was not liable under the policy to defend Goldstone (it had done so under a reservation of rights), and that it was not liable to indemnify Goldstone for any amounts he was required to pay in connection with the action against him by Sears.

On Reliance's motion for summary judgment, the Superior Court ordered entry of a judgment declaring that Reliance was not obligated to indemnify Goldstone and that Reliance was not entitled to recover funds it had expended in connection with defending Goldstone. This appeal was brought by Sears, a named defendant in the declaratory judgment action. Sears filed a counterclaim with its answer to the declaratory judgment complaint. The counterclaim was derivative of any rights to indemnity that might exist under the Reliance policy.

1. *Whether billing is a professional service.* Some baseline principles of interpreting language of an insurance policy: interpretation of an insurance contract is a question of law for the court, *Kelleher* v. *American Mut. Ins. Co.*, 32 Mass. App. Ct. 501, 503 (1992); the context of that language — here the phrase "professional service" — in relation to the policy and the object of the insurance is a primary source of guidance, see *Save-Mor Supermarkets, Inc.* v. *Skelly Detective Serv., Inc.*, 359 Mass. 221, 226 (1971); insurance policies are to be read with an eye to fair meaning, *ibid.*; and "[c]ommon sense is not a stranger to the interpretation of insurance policies." *Smartfoods, Inc.* v. *Northbrook Property & Cas. Co.*, 35 Mass. App. Ct. 239, 245 (1993).

This is not the first occasion on which a Massachusetts court has been asked to decide whether a particular act of a person who practices a profession has the character of a professional service. In *Roe* v. *Federal Ins. Co.*, 412 Mass. 43, 44-46 (1992), the parties put to the court the question — to which there was an exceptionally self-evident answer — whether a dentist's sexual contacts with a patient were professional services and, thus, covered by the dentist's medical malpractice insurance policy. The court had no difficulty concluding that such contacts

were not. *Id.* at 49.[2] During its discussion, the court identified markers for what are professional acts or services. They include specialized knowledge and skill that is acquired through rigorous intellectual training. *Id.* at 48-49.[3] *Jefferson Ins. Co.* v. *National Union Fire Ins. Co.*, 42 Mass. App. Ct. 94, 99 (1997). The setting for the intellectual training is often an academic one, as in architectural school, engineering school, law school, or medical school.

Against those criteria we decide that the billing function of a lawyer is not a professional service. Billing for legal services does not draw on special learning acquired through rigorous intellectual training. We are not aware that courses in billing clients appear in law school curricula. The billing function is largely ministerial. There are elements of experience and judgment in billing for legal services, but the same goes for pricing shoes.[4] As billing is not a professional service, it does not come within the coverage of a professional liability insurance policy, except in the exceptional circumstances described in note 4, *supra*.

[2]As the court in *Roe* v. *Federal Ins. Co.* remarked, incidents involving improper physical contact are generally not covered by professional liability insurance when there is no connection between the contact and the medical practice. There may be coverage when the disjunction between the sexual contacts and professional service is absent or less obvious. Such is the case with sexual advances by a psychiatrist, *id.* at 50, or a sexual assault by a gynecologist during a gynecological examination. See *St. Paul Fire & Marine Ins. Co.* v. *Asbury*, 149 Ariz. 565, 566 (Ct. App. 1986).

[3]The *Roe* opinion, at 48-49, surveys decisions from the courts of other States and Federal courts that state fundamentally the same sense of what is a professional act or service in the context of claims against a malpractice insurance policy. See, particularly, *Marx* v. *Hartford Acc. & Indem. Co.*, 183 Neb. 12, 13 (1968).

[4]We do not diminish the importance of skillful and thoughtful billing. Indeed, billing may have tax consequences, as in divorce cases or structured settlements in tort actions. When, by arrangement, lawyers bill third parties, they must take care not to reveal lawyer-client confidences. Such billing decisions involve the application of knowledge of the law for the benefit of a client; accordingly, they take on the character of professional services. Such instances aside, however, billing for services and the considerable time and effort attendant on billing correctly are not what a client expects to pay for. As to eight factors to be considered about the reasonableness of a legal fee, see *Matter of Fordham*, 423 Mass. 481, 485-486 (1996), cert. denied, 519 U.S. 1149 (1997); ABA Model Rules of Professional Conduct Rule 1.5 (1983); Restatement of the Law Governing Lawyers § 34 comment c (2000).

The billing/professional services dichotomy came up in *Medical Records Assocs., Inc.* v. *American Empire Surplus Lines Ins. Co.*, 142 F.3d 512 (1st Cir. 1998), in which the court, at 516, came to the conclusion that setting prices and producing accurate invoices were generic business practices, not professional services. The court in *Visiting Nurse Assn. of Greater Philadelphia* v. *St. Paul Fire & Marine Ins. & Co.*, 65 F.3d 1097, 1101 (3d Cir. 1995), observed as to the practice of law: "The professional aspect 'involves the rendering of legal advice to and advocacy on behalf of clients for which the attorney is held to a certain minimum professional and ethical standard[].' On the other hand, the commercial aspect involves 'the setting up and running of a business,' including such tasks as securing office space, hiring staff, paying bills, and collecting on accounts receivable."[5]

Goldstone's excessive and unsupported billing to Sears did not constitute the rendering of professional services. Reliance is not liable under its professional liability policy.

2. *Costs.* Sears makes a perfunctory argument that Reliance was not entitled to recover its costs of the action in the amount of $2,392.07. The costs were routine ones: photocopies, deposition transcripts, witness fees, filing fees, and constable fees. Such costs may be recovered under G. L. c. 261, § 1, and Mass. R.Civ.P. 54(d), 382 Mass. 821 (1980), as a matter of course.

*Judgment affirmed.*

---

[5]The interior quotations are from *Harad* v. *Aetna Cas. & Sur. Co.*, 839 F.2d 979, 984-985 (3d Cir. 1988).