**Adam P. CLERMONT, Esquire,**
**Plaintiff/Defendant–in–**
**Counterclaim**

v.

**CONTINENTAL CASUALTY CO.,**
**Defendant/Plaintiff–in–**
**Counterclaim**

v.

**Freedman, DeRosa & Rondeau LLP.**

**C.A. No. 10–cv–10595–MAP.**

United States District Court,
D. Massachusetts.

March 29, 2011.

Adam P. Clermont, APC Law, Pittsfield, MA, pro se.

Frank E. Antonucci, Antonucci & Associates, Lenox, MA, for Plaintiff/Defendant–in–Counterclaim.

John G. O'Neill, Sugarman, Rogers, Barshak & Cohen, Boston, MA, for Defendant/Plaintiff–in–Counterclaim.

*REVISED MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT, AND DEFENDANT'S MOTION TO STRIKE*[1] (Dkt. Nos. 29, 33, & 40)

PONSOR, District Judge.

## I. INTRODUCTION

This case arises out of a fee dispute between Plaintiff, Attorney Adam Cler-

mont, and his former employer, law firm Freedman, DeRosa & Rondeau, LLP ("FDR").[2] In February 2010, FDR sued Plaintiff for fees collected from clients whom Plaintiff continued to represent after leaving FDR. Plaintiff now seeks indemnity from his legal malpractice insurer, Defendant Continental Casualty Company, which agreed to cover claims made "by reason of an act or omission in the performance of legal services by the insured." (Dkt. No. 33, Ex. 27.) Plaintiff filed a three-count complaint for declaratory judgment (Count I), breach of contract (Count II), and violation of Mass. Gen. Laws ch. 93A (Count III). Defendant filed a counterclaim seeking declaratory judgment.

Presently before this court are Defendant's Motion for Summary Judgment (Dkt. No. 29) and Plaintiff's Cross Motion for Summary Judgment (Dkt. No. 33). For the reasons stated below, Defendant's motion will be allowed and Plaintiff's motion will be denied. Defendant's Motion to Strike (Dkt. No. 40) will be denied as moot.

## II. BACKGROUND

### A. The Fee Dispute.

In the summer of 2009, Plaintiff left FDR in order to establish his own law practice. Plaintiff specialized in personal injury law while associated with FDR and took a number of personal injury cases with him to his new law office, including a substantial personal injury case captioned *Peckham v. Collins,* Berkshire Superior Court C.A. No. 09–00153 (the *"Peckham* action").[3] In February 2010, the parties to

---

1. The court has issued this revised memorandum to clarify two potentially confusing oversights in the original text. *See* n. 4 & n. 7 below.

2. By agreement of the parties, Freedman, DeRosa & Rondeau LLP was removed from the case on October 20, 2010.

3. The *Peckham* action involved an automobile accident on January 4, 2008, which resulted

the *Peckham* action agreed to a settlement in the amount of $2,635,000. A written settlement agreement executed by the parties and dated February 12, 2010, provided that the insurer for the defendant, Arbella Mutual Insurance Company ("Arbella"), was to pay roughly $866,000 in contingency legal fees to Plaintiff. Plaintiff had arranged for some of the payments to be structured into an annuity that would provide him with monthly income over the next twenty years.

Upon learning of the settlement, FDR filed suit against Plaintiff in Norfolk Superior Court (the "Norfolk Action") alleging that it was entitled to a share of the contingency fee earned in the *Peckham* action as well as in other cases that Plaintiff took with him when he left the firm. FDR asserted that Plaintiff had failed to keep FDR apprised of the status of these cases and had settled several of them without paying any portion of the contingency fee owed to FDR. Based on these allegations, FDR set forth claims for, *inter alia,* breach of fiduciary duty, conversion, and unjust enrichment. FDR also sought a temporary restraining order preventing the disbursement of any contingency legal fees in the *Peckham* action, which the Superior Court issued on February 23, 2010.

In addition to the Norfolk Action, FDR also filed a notice of attorney's lien in the underlying *Peckham* action (the *"Peckham* Lien") and in several other personal injury actions that Plaintiff took with him when he left the firm. Plaintiff filed counterclaims in the Norfolk Action seeking recovery against FDR and also filed his own

lawsuit against FDR in Berkshire Superior Court (the "Berkshire Action"). A few days later, Plaintiff sought coverage for the Norfolk Action and the *Peckham* Lien under a professional liability insurance policy he had purchased from Defendant.

**B.** *The Professional Liability Insurance Policy.*

Defendant issued Lawyer's Professional Liability Policy No. 287417376 (the "Policy") to the Law Office of Adam P. Clermont, Esquire, covering August 1, 2009, through August 1, 2010. The Policy contains an insuring agreement that provides that:

> A. COVERAGE
>
> The *Company* agrees to pay on behalf of the *Insured* all sums in excess of the deductible that the *Insured* shall become legally obligated to pay as *damages* and *claim expenses* because of a *claim* that is both first *made* against the *Insured* and reported in writing to the *Company* during the *policy period* by reason of an act or omission in the performance of *legal services* by the *Insured* or by any person for whom the *Insured* is legally liable.

(Dkt. No. 33, Ex. 27 (emphasis in original).)[4]

The term "Claim" is defined under Section III.C of the Policy to include:

> a demand, including the service of suit or the institution of any alternative dispute resolution proceeding, received by the *Insured* for money or services arising out of: (1) an act or omission, . . . in

---

in severe personal injuries to the plaintiff, Thomas Peckham.

**4.** In its original memorandum and order (Dkt. No. 44), the court cited the Policy as docket number 5, exhibit 4, which, in fact, was meant to refer to docket number 5, attachment 4, exhibit 1. For ease of reference, the court has replaced this citation (throughout the memorandum) with docket number 33, exhibit 27, which also contains the Policy at issue here.

the rendering of or failure to render *legal services;* ...

(*Id.* (emphasis in original).)

The term "Legal Services" is defined in Section III.K.1. to encompass "those services, including pro bono services, performed by an *Insured* for others as a lawyer, arbitrator, mediator, other neutral fact finder, as a notary public or as a title agent ...." (*Id.* (emphasis in original).)

The term "Damages" is defined under Section III.F as follows:

F. *"Damages"* mean judgments, awards and settlements, provided any settlements are negotiated with the assistance and approval of the *Company*. *Damages* do not include:

1. legal fees, costs and expenses paid or incurred or charged by the *Insured*, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing;

. . . .

3. injunctive or declaratory relief.

(*Id.* (emphasis in original).)

C. *Defendant's Response to Request for Coverage.*

After receiving Plaintiff's request, Defendant informed Plaintiff that it would not defend him because the Policy did not cover his ongoing dispute with FDR. Defendant then issued a written denial of coverage on March 9, 2010.

That same day, Plaintiff retained Attorney Mark Albano to represent him in the Norfolk Action. Attorney Albano appeared in Norfolk Superior Court on Plaintiff's behalf to challenge FDR's efforts to extend the temporary restraining order into a preliminary injunction. He also represented Plaintiff at a telephonic Rule 16 conference held by the court in the *Peckham* action on March 19, with respect to FDR's request for a second preliminary injunction. Notwithstanding Attorney Albano's efforts, the Superior Court granted the injunctive relief sought by FDR.

After sending several letters disputing Defendant's denial of coverage, Plaintiff filed this suit against Defendant in Berkshire Superior Court on March 17, 2010. Later that day, Defendant reconsidered its earlier denial and stated that it would provide Plaintiff with a defense in the Norfolk Action. Defendant informed Plaintiff on March 26 that it anticipated the defense would be subject to a reservation of rights, and, on March 30, Defendant sent Plaintiff a written notice formally reserving its rights.

After agreeing to defend Plaintiff, Defendant hired Attorney Jeffrey McCormick to conduct the litigation on Plaintiff's behalf. However, after issues arose regarding the scope of his representation, Plaintiff indicated that he would prefer to be represented by independent counsel of his choosing.[5]

Plaintiff later notified Defendant that he wanted to be represented by Attorney William Worth and directed Defendant to discuss a fee arrangement with him. By letter dated April 16, 2010, Defendant reaffirmed its view that it owed Plaintiff neither coverage nor defense, but that it would agree to pay Attorney Worth to defend against FDR's claims in the Norfolk Action only.

---

**5.** As discussed in greater detail below, Plaintiff alleges that Attorney McCormick's defense was inadequate; that Attorney McCormick revealed confidential information to Defendant, which never intended to indemnify him, and that these events ultimately undercut his ability to defend himself against FDR.

Defendant reiterated that it would not provide a defense for the other legal disputes with FDR, and proposed that Attorney Worth's fees be segregated accordingly. When it became clear that segregating Attorney Worth's fees in such a way would prove difficult or impossible, he and Defendant agreed that Defendant would pay for fifty percent of all work performed on Plaintiff's behalf at a rate of $300 per hour.

## D. *Arbitration.*

On April 16, Plaintiff also retained Attorney Robert M. Fuster to represent him in his other legal disputes with FDR. Ten days later, Attorney Fuster appeared in the Berkshire County Superior Court for a hearing and represented to the court that Plaintiff and FDR had agreed to submit their claims to binding arbitration. On May 26, Plaintiff and FDR executed a written agreement to arbitrate.

On June 11, retired Superior Court Justice Allan van Gestel presided over the hearing, and one month later he issued a decision awarding FDR fifty percent of the $866,666.66 contingency fee in the *Peckham* action ($433,333.33) and denying Plaintiff any relief on his claims against FDR. Among other things, the arbitrator found that Plaintiff had failed to honor a promise to share with FDR on a fifty-fifty basis any contingency fees in excess of $50,000 that he earned on cases that he took with him when he left the firm. Although Arbella has already satisfied the award in favor of FDR in full with the contingency fees it was holding from the *Peckham* action, Plaintiff demands that Defendant indemnify him with respect to the award.

---

**6.** Defendant reduced Attorney Albano's fees by $2,500 based on the amount of the deductible, for which Plaintiff would have been responsible had coverage been available.

## E. *Payment of Legal Fees.*

To this date, Defendant has paid one half of Attorney Worth's legal fees as well as one half of the expenses associated with his representation of Plaintiff in all of the disputes with FDR, pursuant to the agreement described above. Defendant has also paid the legal fees submitted by Plaintiff's personal counsel, Attorney Albano, for defending Plaintiff during the early stages of the matter.[6] However, Defendant has refused to indemnify Plaintiff with respect to the $433,333.33 award in favor of FDR.

## III. *DISCUSSION*

### A. *Legal Standard.*

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court views the evidence in the light most favorable to the non-moving party, and the moving party bears the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This standard is not changed when the parties bring cross motions for summary judgment; each nonmovant receives the benefit of favorable inferences. *See Estate of Hevia v. Portrio Corp.,* 602 F.3d 34, 40 (1st Cir. 2010).

### B. *Denial of Coverage.*

#### 1. *The Coverage Provision.*

Plaintiff asserts that Section I.A of the Policy, which covers claims made "by reason of an act or omission in the performance of *legal services* by the *Insured,"* applies to the underlying actions brought against Plaintiff by FDR.[7] (Dkt. No. 33,

---

**7.** In its original memorandum and order (Dkt. No. 44), the court recited the Policy's

Ex. 27 (emphasis in original).) This court disagrees.

The closest Massachusetts case on point is *Reliance National Insurance Company v. Sears, Roebuck and Company*, 58 Mass.App.Ct. 645, 792 N.E.2d 145 (2003) (*"Reliance"*). In *Reliance,* Sears, a former client of Attorney Daniel W. Goldstone, sought to recover compensation for fraudulent billing practices by Goldstone. Attorney Goldstone carried a legal malpractice policy with Reliance National Insurance Company, which covered claims "aris[ing] out of the rendering or failure to render professional services for others in the insured's capacity as a lawyer." *Id.* at 147. First, the appeals court identified "markers" for professional services, including "specialized knowledge and skill that is acquired through rigorous intellectual training." *Id.* Noting that "courses in billing clients [do not] appear in law school curricula" and "the billing function is largely ministerial," the appeals court found for the insurance company, Reliance, holding that "the billing function of a lawyer is not a professional service." *Id.* at 148.

The First Circuit, interpreting Massachusetts law, has expressed a similar understanding of "professional services." In *Medical Records Associates, Inc. v. American Empire Surplus Lines Insurance Co.*, 142 F.3d 512 (1st Cir.1998), the court held that an insurance policy covering "professional services" rendered by a medical records processing company did not cover an action for overbilling. The court explained its decision as follows:

[T]he bottom line ... is that "professional services" ... embrace those activities that distinguish a particular occupation from other occupations—as evidenced by the need for specialized learning or training—and from the ordinary activities of life and business.

*Id.* at 516. *See also Massamont Ins. Agency, Inc. v. Utica Mut. Ins. Co.,* 489 F.3d 71, 73 (1st Cir.2007) (holding that insured's diversion of business in breach of exclusivity agreement was a business decision, not a professional service).

Here, to begin with, the Policy defines "legal services" as "those services, including pro bono services, performed by an Insured for others as a lawyer, arbitrator, mediator, as well as a notary public, or as a title agent." (Dkt. No. 33, Ex. 27.) This definition, apart from its focus on a lawyer's activities, is not substantively different from the definitions for "professional services" set out in the case law. The critical issue, then, is whether the underlying complaint brought by FDR to recover legal fees from Plaintiff was based on an act or omission involving "specialized knowledge and skill that is acquired through rigorous intellectual training," rather than a business decision or some ministerial aspect of Plaintiff's work. *Reliance*, 792 N.E.2d at 147.

While *Reliance* does not squarely address this issue, its rationale for excluding billing practices from coverage ("courses in billing clients [do not] appear in law school curricula" and "the billing function is largely ministerial") applies with equal force to a fee dispute with a former employer. The underlying cause of action

definition of "claim," which, under Section III.C, refers to a demand for money "arising out of: (1) an act or omission, ... in the rendering of or failure to render *legal services*." (Dkt. No. 33, Ex. 27.) For the sake of consistency, the court has replaced this provision with the Policy's coverage provision under Section I.A, which contains slightly different phrasing, as noted in text. The apparent incongruity between these provisions does not alter the court's analysis or its rulings.

here was not based on a wrongful act or omission in the provision of legal services; it was based on a wrongful act or omission in the operation of a business that happened to provide legal services.

Plaintiff contends that FDR's complaint "challenged [Plaintiff's] decisions regarding litigation strategy," specifically his failure to send joint letters to certain clients informing them of their rights; choosing to structure the *Peckham* settlement; and choosing not to settle the case prior to filing a lawsuit. (Dkt. No. 35, Pl.'s Mem. Supp. at 8.) However, as Defendant correctly points out, the complaint ultimately sought relief as a result of the following three actions: "(i) pirating cases from FDR; (ii) failing to apprise FDR of the status of his work, and/or settlement, on his cases, including the Peckham case; (iii) settling several cases without paying any portion of the fee to FDR." (Dkt. No. 5, Ex. 4, FDR Am. Compl. ¶ 32.) Although FDR's complaint made various allegations of misconduct by Plaintiff, it sought relief, at its core, for the alleged violation of a

fee-sharing arrangement with a former employer, which is part of "the billing function of a lawyer ... not a professional service." *Reliance,* 792 N.E.2d at 148.

The parties also note that a split of authority exists among other jurisdictions. Defendant, of course, relies on cases in which state courts have found that legal malpractice insurance policies do not cover an attorney's fee-sharing arrangements.[8] Plaintiff cites three cases in other jurisdictions that reached the opposite conclusion.[9]

Significantly, two of the three cases relied on by Plaintiff (*Cole* and *Lyons* ) were distinguished by the First Circuit in *Medical Records Associates, Inc. v. American Empire Surplus Lines Insurance Co.,* 142 F.3d 512, 516 (1st Cir.1998). There, the First Circuit found it significant that the policy only covered harms that occurred "by reason of" particular acts by the insured, rather than "arising out of" such acts. The court distinguished these phrases in the following way:

---

8. *See, e.g., Continental Cas. Co. v. Donald T. Bertucci, Ltd.,* 399 Ill.App.3d 775, 339 Ill.Dec. 358, 926 N.E.2d 833, 844 (2010) (policy covering "an act or omission ... in the rendering of or failure to render legal services" did not apply to "fee arrangements and other business disputes"); *Garland, Samuel & Loeb P.C. v. Am. Safety Ins. Co.,* 287 Ga.App. 254, 651 S.E.2d 177 (2007) (policy covering an "act, error, omission, or Personal Injury resulting from the performance of Professional Services" did not apply to alleged breach of fee-sharing agreement); *Roberts v. Florida Lawyers Mut. Ins. Co.,* 839 So.2d 843, 845 (Fla. App.Ct.2003) (policy covering "act, error or omission in Professional Services provided" did not apply to law partners' "dispute over how to divide money received from a lawsuit"); *Cohen v. Empire Casualty Co.,* 771 P.2d 29, 31 (Colo.App.Ct.1989) (policy covering "acts or omissions in rendering or failing to render professional services for others in his capacity as a lawyer" did not apply to fees owed by insured attorney to another attorney for help in assisting insured attorney's client).

9. *See Continental Cas. Co. v. Cole,* 809 F.2d 891, 896 (D.C.Cir.1987) (policy covering "damages arising from the performance of professional services for others in the insured's capacity as a lawyer" applied to damages incurred by insured law firm in connection with a fee-sharing arrangement with referring attorney); *Lyons v. Am. Home Assur. Co.,* 354 N.W.2d 892, 895 (Minn.Ct. App.1984) (policy covering claims "arising from the performance of professional services for others in the insured's capacity as a lawyer" applied to expenses incurred by insured attorney in connection with a fee-sharing dispute with former law partners); *Home Ins. Co. v. Bullard,* 1988 WL 71192, 850 F.2d 692 (6th Cir.1988) (Table) (policy covering "any act, error or omission in professional services rendered ... arising out of the conduct of the insured's profession as a lawyer" applied to expenses incurred by insured attorney in connection with a fee-sharing dispute with former employer).

The latter arguably requires a determination that the harm alleged was due to the manner in which professional services were provided; the former appears to require only a connection between the challenged conduct and the insured's provision of professional services.

*Id.* at 516 n. 4. *See also New England Mut. Life Ins. Co. v. Liberty Mut. Ins. Co.,* 40 Mass.App.Ct. 722, 667 N.E.2d 295, 298 (Mass.1996) ("The usual meaning ascribed to the phrase 'arising out of' is much broader than 'caused by' . . . ."). Because both *Cole* and *Lyons* used the broader "arising out of" language, the First Circuit found those cases to be easily distinguishable. The same is true here.

In sum, because the harms alleged in the underlying dispute occurred by reason of a business decision by Plaintiff and not the provision of legal services, this court holds that the Policy did not cover the underlying actions by FDR against Plaintiff.

2. *The Damages Provision.*

■ Defendant also argues that the Policy's damages provision excludes the underlying action from coverage. The Policy covers claims for "damages," which, according to Section III.F of the Policy, *excludes* "(1) legal fees, costs and expenses paid or incurred or charged by the Insured, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing" as well as "(3) injunctive or declaratory relief." (Dkt. No. 33, Ex. 27.) Because the underlying action involves a dispute over legal fees and the Policy expressly excludes "legal fees" from coverage, Defendant argues that Plaintiff is unable to seek indemnity for his losses.

In support, Defendant relies on three state court cases that stand for this proposition. *See Continental Cas. Co. v. Donald T. Bertucci, Ltd.,* 399 Ill.App.3d 775, 339 Ill.Dec. 358, 926 N.E.2d 833, 844 (2010) (policy did not cover suit by client against insured for taking excessive fee in breach of fee agreement where damages provision excluded, *inter alia,* "legal fees, costs and expenses paid or incurred or charged by the Insured, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing"); *Tana v. Prof. Prototype I Ins. Co.,* 47 Cal.App.4th 1612, 55 Cal.Rptr.2d 160 (Cal.Ct.App.1996) (policy did not cover suit by client against insured attorney for retaining excessive amount of attorney's fees where damages provision excluded, *inter alia,* "legal fees, costs, and expenses"); *Continental Casualty Co. v. Brady,* 127 Idaho 830, 907 P.2d 807, 811 (1995) (policy did not cover suit by client against insured for taking unreasonably high fee in breach of fee agreement where damages provision excluded, *inter alia,* "any fine, penalty, or claim for return of fees").

Plaintiff cites two cases in response, both of which are clearly inapposite. *See Continental Cas. Co. v. Law Offices of Melvin James Kaplan,* 345 Ill.App.3d 34, 280 Ill.Dec. 47, 801 N.E.2d 992 (Ill.App.Ct. 2003) (holding that damages provision did not exclude claim for damages arising from bankruptcy attorney's alleged negligent failure to secure discharge of former client's pre-petition obligation to pay attorney's fees because the injury suffered was a consequence of attorney's negligent representation of client); *Continental Cas. Co. v. Feingerts & Kelly, APLC,* 132 Fed. Appx. 14, 18 (5th Cir.2005) (holding that "majority of [plaintiff's] claims . . . are excluded from coverage under the Policy because those claims seek damages for legal fees" but also holding that one claim was

not unambiguously excluded where former client alleged that attorney failed to apprise her of settlement proceedings).

Here, as in the cases Defendant cites above, the underlying action "is a fee dispute and does not allege 'damages' within the meaning of the policy." *Donald T. Bertucci, Ltd.*, 339 Ill.Dec. 358, 926 N.E.2d at 844. Thus, because the damages provision expressly excluded actions to recover legal fees, Defendant enjoys a strong independent basis for summary judgment.

### C. *Estoppel.*

■ Plaintiff argues that Defendant is estopped from denying coverage after representing to Plaintiff that it would cover his claims. This argument is unpersuasive.

■ In Massachusetts, a liability insurer, " 'having led the assured to rely exclusively on its protection during the period when he might have protected himself ... cannot, in fairness, thereafter withdraw that protection.'" *Specialty Nat. Ins. Co. v. OneBeacon Ins. Co.*, 486 F.3d 727, 735 (1st Cir.2007) (quoting *Salonen v. Paananen*, 320 Mass. 568, 71 N.E.2d 227, 230 (Mass.App.Ct.1947)) (hereinafter *"Specialty"*). The familiar legal principle of estoppel governs such situations. *Id.*

> [T]o become estopped from denying coverage under a liability insurance policy, an insurer must say or do something intended to induce conduct on the part of its insured; the insured must act or refrain from acting in reasonable reliance on the insurer's representation; and the insured must suffer some detriment as a result.

*Id.* Estoppel often turns on determinations of fact, but where the relevant facts are established, the court may treat the issue as a question of law. *Id.*

In *Specialty*, where there was "no suggestion, let alone any evidence, that [the insurer] mishandled [the insured's] defense," the First Circuit held that estoppel did not apply. *Id.* at 736. The court expressly distinguished *Safety Insurance Co. v. Day*, 65 Mass.App.Ct. 15, 836 N.E.2d 339, 347 (M2005), which held that estoppel applied where the insurance company ignored opportunities to settle the case and inadvertently disclosed confidential documents discussing litigation strategy to opposing counsel.

Here, Plaintiff argues that Defendant mishandled his defense in several ways: 1) Defendant hired Attorney McCormick who failed to seek recusal of the Superior Court judge in the *Peckham* action due to a conflict of interest, resulting in a continuation of the injunction; 2) Defendant improperly obtained confidential information from Attorney McCormick; and 3) Defendant interfered with Plaintiff's ability to retain independent counsel and "forced" Plaintiff into arbitration with FDR due to his inability to handle the costs of litigation himself.

As a preliminary matter, Plaintiff fails to appreciate a critical distinction between this case and the cases cited above: here, Defendant informed Plaintiff that it was disputing coverage and that its defense would be subject to a reservation of rights *less than two weeks* after agreeing to defend Plaintiff.[10] In contrast, the insurance company in *Specialty* controlled the defense of the plaintiff's claims for over two years without asserting that those claims were excluded from coverage. 486 F.3d at 735. Notably, the court held that estoppel

---

10. On March 17, 2010, Defendant informed Plaintiff that it would defend him, and, on March 30, Defendant confirmed that this defense would be subject to a reservation of rights.

did not apply even in spite of this delay. *Id.*

In addition, Plaintiff's criticisms regarding the handling of his defense are unfounded. The court can dispatch the first two contentions fairly easily. As to the first argument, Plaintiff cannot prove any link, let alone a causal link, between Attorney McCormick's alleged failure to seek recusal of the Superior Court judge and any unfavorable ruling he received in that case. Moreover, Plaintiff's interests were doubly protected at that time, as he was also represented by his own personal counsel, Attorney Albano.

Similarly, Plaintiff's contention that Attorney McCormick revealed confidential information that somehow infected the ongoing litigation rests on pure speculation. Attorney McCormick was actively involved in the case for less than two weeks, between March 18 and March 29, and Plaintiff has not pointed to any specific action taken by Attorney McCormick that in *any* way prejudiced his defense.

Plaintiff's third argument requires a bit more attention, largely because of the dense fact pattern that developed between March and April of 2010. It is undisputed that Defendant informed Plaintiff on March 26, 2010, that it anticipated its defense would be under a reservation of rights, and, four days later, on March 30, Defendant issued Plaintiff a written confirmation of the latter. However, Plaintiff argues that Defendant "again refused to acknowledge that [Plaintiff] was entitled to retain independent counsel" and informed Plaintiff that it was "willing to consider [Plaintiff's] choice of independent counsel contingent on the attorney meeting the policy requirements set forth in Section I.B. of the policy."[11] (Dkt. No. 34, Pl.'s

Mem. Opp'n at 13.) Plaintiff argues that this uncertainty, combined with Attorney McCormick's "abrupt departure" on March 29, "further prejudiced [Plaintiff's] efforts to mount a cohesive defense." (*Id.* at 15.) Plaintiff concludes that he was "left without a defense and, ultimately, forced into [arbitration] with FDR." (Dkt. No. 35, Pl.'s Mem. Supp. at 2.) The undisputed facts, however, conclusively indicate otherwise.

Shortly after notifying Plaintiff that it would defend him, Defendant retained Attorney McCormick, who competently represented Plaintiff's interests until *Plaintiff* abruptly ended the relationship, deciding to seek out counsel of his own choosing. Even if Defendant's discussions about compensating Plaintiff's newly retained attorney (Attorney Worth) created uncertainty, Plaintiff has failed to offer any evidence that this alleged uncertainty had any impact the outcome of the case. Defendant notified Plaintiff on April 16 that it would compensate Attorney Worth for his services. Around this time, Plaintiff also retained Attorney Fuster to defend him in some of the FDR-related proceedings. On April 26, Attorney Fuster represented to the Berkshire County Superior Court that Plaintiff agreed to submit his dispute with FDR to binding arbitration, and the parties executed a written agreement to arbitrate one month later. Plaintiff has not produced any evidence that would allow a reasonable jury to conclude that this arbitration agreement was anything other than the product of a thoughtful and strategic decision reached with the advice of counsel.

Plaintiff relies primarily on a statement by Attorney Worth that "[o]n or about April 22, 2010, [Plaintiff] informed me that

---

11. Section I.B of the Policy provides that the insured is entitled to select independent counsel in the event that the insurer reserves its rights on grounds that create a conflict of interest. (Dkt. No. 33, Ex. 27.)

he could no longer afford to litigate his dispute with FDR as Continental had abandoned his defense," (Dkt. No 40, Ex. A, Worth Aff. ¶ 12), but this statement is problematic for two reasons. First, the statement contains inadmissible hearsay, which the court may not consider in deciding a motion for summary judgment. *See* Fed.R.Civ.P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge [and] set out facts that would be admissible in evidence . . . ."). Second, even assuming that Plaintiff subjectively believed that Defendant "had abandoned his defense" on April 22, which is doubtful, this subjective concern is belied by the objective facts. Defendant, far from "abandoning" Plaintiff, had both provided counsel to defend Plaintiff (Attorney McCormick) and had confirmed that it would compensate Plaintiff's choice of counsel (Attorney Worth). The test, of course, is an objective one, *see Specialty*, 486 F.3d at 735, and it was not objectively reasonable for Plaintiff to conclude that Defendant had abandoned his defense given what had occurred to that date.

Furthermore, Plaintiff's suggestion that litigation would have produced a better result for him than arbitration is wholly speculative. Considering the result of the arbitration, Plaintiff apparently now wishes, in hindsight, that he had chosen a different path. It is possible that, had he taken the case to trial, he would have won. It is equally possible that he would have fared much worse. Such unfounded conjecture adds nothing to Plaintiff's argument. Plaintiff simply cannot demonstrate that his interests were prejudiced by his decision to proceed with arbitration.

In sum, given that Defendant issued a reservation of rights within two weeks of agreeing to defend Plaintiff and did nothing to prejudice Plaintiff's defense, estoppel does not apply.

### D. *Duty to Defend.*

██ Plaintiff also argues that, in addition to wrongfully denying coverage, Defendant failed to defend Plaintiff in the underlying action by FDR. This argument cannot hold water. Defendant had no duty to defend Plaintiff, and, even if it did, Defendant fulfilled that duty.

██ "It is axiomatic that an insurance company's duty to defend is broader than its duty to indemnify." *Boston Symphony Orchestra v. Commercial Union Ins. Co.*, 406 Mass. 7, 545 N.E.2d 1156, 1158 (1989). The duty to defend is determined by reference to the allegations in the complaint and "facts known or readily knowable" by the insurer. *Billings v. Commerce Ins. Co.*, 458 Mass. 194, 936 N.E.2d 408, 414 (2010). For the duty to arise, the insured need only show that the allegations in the complaint are "reasonably susceptible of an interpretation that they state . . . a claim covered by the policy terms." *Id.* at 414 n. 6 (citations and quotation marks omitted). "However, when the allegations in the underlying complaint lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate or defend the claimant." *Id.* (citations and quotation marks omitted).

As explained above, the complaint filed by FDR clearly sought damages and injunctive relief arising from a fee dispute between Plaintiff and his former employer, not from inadequate legal services provided to a client. The allegations in that complaint are not reasonably susceptible of a contrary interpretation but rather "lie expressly outside the police coverage and its purpose." *Id.* Thus, Defendant had no duty to defend Plaintiff.

Furthermore, even if Defendant had had a duty to defend Plaintiff, it fulfilled that

duty. As noted, shortly after Plaintiff retained Attorney Worth, Defendant agreed to pay Attorney Worth at a rate of $300 per hour for all services rendered with respect to the Norfolk action. However, given the apparent difficulty in segregating charges for the Norfolk Action from the various other disputes with FDR in which Attorney Worth was representing Plaintiff, Defendant agreed to reimburse fifty percent of *all* fees charged by Attorney Worth for his representation of Plaintiff. (Dkt. No. 41, Ex. O.) This agreed arrangement was entirely reasonable, and Plaintiff does not dispute that Defendant compensated Attorney Worth accordingly. Thus, even assuming *arguendo* that Defendant had a duty to defend Plaintiff, Defendant fully satisfied its obligations.

E. *Chapter 93A.*

Given that Plaintiff has provided no independent basis for its Chapter 93A claim, the court will grant summary judgment for Defendant on this count as well. *See Boston Symphony Orchestra,* 545 N.E.2d at 1160 (upholding summary judgment for defendant insurance company on 93A claim even in spite of its conclusion that defendant had incorrectly interpreted the policy).

F. *Defendant's Motion to Strike (Dkt. No. 40).*

Defendant has moved to strike various statements made by Plaintiff in his opposition to Defendant's motion for summary judgment. (Dkt. No. 40). Given the above ruling on the motions for summary judgment, the court will deny Defendant's motion to strike as moot.

IV. *CONCLUSION*

For the foregoing reasons, Defendant's Motion for Summary Judgment (Dkt. No. 29) is hereby ALLOWED and Plaintiff's Cross Motion for Summary Judgment (Dkt. No. 33) is hereby DENIED. Defendant's Motion to Strike (Dkt. No. 40) is hereby DENIED AS MOOT. The clerk will enter judgment for Defendant. The case may now be closed.

It is So Ordered.