A07A1900. GARLAND, SAMUEL & LOEB, P.C. et al.
v. AMERICAN SAFETY CASUALTY INSURANCE COMPANY.
(651 SE2d 177)

BLACKBURN, Presiding Judge.

In this insurance coverage action, Edward Garland ("Garland") and his law firm (Garland, Samuel & Loeb, P.C.) appeal the trial court's granting of American Safety Casualty Insurance Company's ("American Safety") motion to dismiss. Specifically, Garland and his firm argue that the trial court erred in finding that under the professional liability insurance policy issued to Garland's firm, American Safety had no duty to defend Garland or the firm in a breach-of-contract claim. For the reasons set forth below, we affirm.

---

[6] *Chicago Title Ins. Co. v. Investguard, Ltd.*, 215 Ga. App. 121, 123-124 (2) (449 SE2d 681) (1994).

We treat American Safety's motion to dismiss as a motion for judgment on the pleadings, because its motion was predicated on Garland's complaint and the contract incorporated therein. *Haldi v. Piedmont Nephrology Assoc., P.C.*[1] "On appeal, we review de novo the trial court's decision on a motion for judgment on the pleadings, and we construe the complaint in a light most favorable to the appellant, drawing all reasonable inferences in [its] favor." (Punctuation omitted.) Id.

So viewed, the record shows that in 2005, Garland's law firm purchased a "Lawyers' Professional Liability Insurance Policy" from American Safety. The "Coverage" section of the policy provides:

> The Company will pay on behalf of the Insured all Damages that the Insured becomes legally obligated to pay as a result of any Claim first made against the Insured during the Policy Period and reported to the Company during the Policy Period, or within 60 days thereafter or during the Extended Reporting Period, if purchased, for any actual or alleged act, error, omission, or Personal Injury *resulting from the performance of Professional Services.*

(Emphasis supplied.) The policy defines "Professional Services" to mean "services rendered by an Insured for others . . . as a lawyer, notary public or title agent. . . ." In addition, the "Exclusions" section of the policy provides in part that American Safety "will not pay Damages or Claim Expenses in connection with any Claim . . . arising out of an obligation assumed under any written or oral contract or agreement other than an obligation to perform Professional Services."

In April 2005, a Florida attorney filed a breach-of-contract claim against Garland and his firm in Florida, alleging that Garland had breached a fee-sharing agreement between the two parties. Specifically, the Florida attorney alleged that he had referred a client to Garland for legal representation in return for Garland's promise to pay him one-third of the legal fees paid by the client, but that Garland had not paid him the promised amount. Shortly after being served with the Florida attorney's complaint, Garland and his firm tendered the defense of the lawsuit to American Safety. However, following its review of the lawsuit, American Safety denied that it had a duty to defend, claiming that the breach-of-contract action was not within the scope of coverage provided by its insurance policy.

---

[1] *Haldi v. Piedmont Nephrology Assoc., P.C.*, 283 Ga. App. 321, 322 (641 SE2d 298) (2007).

In June 2006, a federal court granted summary judgment to Garland and his firm as to the Florida attorney's breach-of-contract claim. Subsequently, Garland and his firm demanded that American Safety reimburse the firm for the legal fees it incurred in defending the claim. After American Safety again denied coverage, Garland and his firm filed suit, alleging that American Safety's denial of coverage constituted a breach of the insurance policy. American Safety filed a motion to dismiss the complaint, which the trial court granted. This appeal followed.

In their sole enumeration of error, Garland and his firm contend that the trial court erred in granting American Safety's motion to dismiss the complaint based on its finding that under the professional liability insurance policy issued to Garland's firm, American Safety had no duty to defend Garland or the firm in the Florida attorney's breach-of-contract claim. We disagree.

"An insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured." *City of Atlanta v. St. Paul Fire & Marine Ins. Co.*[2] "[W]here the complaint filed against the insured does not assert any claims upon which there would be insurance coverage, the insurer is justified in refusing to defend the insured's lawsuit." Id. "Construction of an insurance policy is governed by the ordinary rules of contract construction, and when the terms of a written contract are clear and unambiguous, the court is to look to the contract alone to find the parties' intent." (Punctuation omitted.) *Scottsdale Ins. Co. v. Great American Assurance Co.*[3] See *Nationwide Mut. Fire Ins. Co. v. Somers.*[4] In addition,

> an insurance company may fix the terms of its policies as it wishes, provided they are not contrary to law, and it may insure against certain risks and exclude others. Though exclusions in insurance policies are strictly construed against the insurer, one that is plain and unambiguous binds the parties to its terms and must be given effect, even if beneficial to the insurer and detrimental to the insured. We will not strain to extend coverage where none was contracted or intended.

---

[2] *City of Atlanta v. St. Paul Fire & Marine Ins. Co.*, 231 Ga. App. 206, 207 (498 SE2d 782) (1998).

[3] *Scottsdale Ins. Co. v. Great American Assurance Co.*, 271 Ga. App. 695, 696 (1) (610 SE2d 558) (2005).

[4] *Nationwide Mut. Fire Ins. Co. v. Somers*, 264 Ga. App. 421, 426 (3) (a) (591 SE2d 430) (2003).

(Punctuation omitted.) *Fidelity Nat. Title Ins. Co. of N.Y. v. OHIC Ins. Co.*[5]

Here, the professional liability policy issued to Garland's firm by American Safety provided that the firm would be afforded coverage for any claim made against it for any act, error, omission, or personal injury "resulting from the performance of Professional Services." In determining what types of actions by an insured constitute the providing of "professional services," this Court looks to the nature of the act the insured performed, rather than the title or status of the insured. *St. Paul &c. Ins. Co. v. Alderman.*[6] "Something more than an act flowing from mere employment or vocation is essential. The act or service must be such as exacts the use or application of special learning or attainments of some kind." (Punctuation omitted.) Id. at 779. See *Roe v. Fed. Ins. Co.*[7]

While no Georgia case authority involving insurance coverage has addressed the specific circumstances at issue here, cases from other jurisdictions involving similar circumstances have determined that lawyers' professional liability insurance policies do not provide coverage for claims arising solely from contractual disputes, such as disagreements over fees, because such claims do not arise from the rendering of professional services as an attorney. See *Cohen v. Empire Cas. Co.*[8] (dispute as to whether one attorney owed fees to another attorney for services rendered on behalf of client did not arise from rendering of professional services and therefore was not covered by lawyer's professional liability policy); *Roberts v. Fla. Lawyers Mut. Ins. Co.*[9] (fee dispute between former partners did not arise from law firm's rendering of professional services). See also *Gregg & Valby, L.L.P. v. Great American Ins. Co.*[10] (billing and fee setting are not professional services and thus disputes involving such issues are not covered by a professional liability policy); *Reliance Nat. Ins. Co. v. Sears, Roebuck & Co.*[11] (dispute regarding excessive billing did not arise from rendering of professional services and therefore was not covered by professional liability policy); *Nat. Union Fire Ins. Co. of Pittsburgh, Pa. v. Shane & Shane Co.*[12] (fee dispute between client

---

[5] *Fidelity Nat. Title Ins. Co. of N.Y. v. OHIC Ins. Co.*, 275 Ga. App. 55, 57 (619 SE2d 704) (2005).

[6] *St. Paul &c. Ins. Co. v. Alderman*, 216 Ga. App. 777, 778 (455 SE2d 852) (1995).

[7] *Roe v. Fed. Ins. Co.*, 587 NE2d 214, 217 (1) (Mass. 1992).

[8] *Cohen v. Empire Cas. Co.*, 771 P2d 29, 31 (Colo. App. 1989).

[9] *Roberts v. Fla. Lawyers Mut. Ins. Co.*, 839 S2d 843, 846 (Fla. Ct. App. 4th Dist. 2003).

[10] *Gregg & Valby, L.L.P. v. Great American Ins. Co.*, 316 FSupp.2d 505, 513 (IV) (A) (3) (S.D. Tex. 2004).

[11] *Reliance Nat. Ins. Co. v. Sears, Roebuck & Co.*, 792 NE2d 145, 148 (1) (Mass. App. 2003).

[12] *Nat. Union Fire Ins. Co. of Pittsburgh, Pa. v. Shane & Shane Co.*, 605 NE2d 1325, 1329 (III) (Ohio App. 1992).

and attorney did not arise from attorney providing professional services and thus was not covered by professional liability policy).

We find these cases to be persuasive and in accordance with our own holding that the provision of "professional services," as defined in professional liability policies, necessarily entails an application of special learning unique to the insured's profession. See *Alderman*, supra, 216 Ga. App. at 779. As held in *Cohen*,

> [e]xpenses incurred by a lawyer for maintaining his office, hiring secretaries, investigators, consultants, expert witnesses, and associates are incidental to a lawyer's *business*. His failure to pay either the cost of, or reasonable value for, such *business* expenses cannot rationally be deemed a failure to provide legal advice or assistance to others *in his professional capacity as a lawyer*.

(Emphasis in original.) *Cohen*, supra, 771 P2d at 31. Here, given the fact that the Florida attorney's lawsuit against Garland and his firm involved the alleged breach of a fee-splitting agreement incidental to the firm's business as a law firm, the claim did not arise from Garland's or his firm's acts or omissions in rendering professional services as lawyers and was not covered by the policy issued by American Safety. See id. Indeed, such an interpretation is further supported by the fact that the policy specifically excludes breach of contract from the types of claims that American Safety is required to defend. See *Fidelity Nat. Title Ins. Co. of N.Y.*, supra, 275 Ga. App. at 60 (holding that unambiguous and unqualified language of exclusions contained in a policy controls). Accordingly, under the plain and unambiguous meaning of the Professional Liability Insurance Policy, American Safety had no duty to defend Garland or his law firm in the Florida breach-of-contract action.

*Judgment affirmed. Ruffin and Bernes, JJ., concur.*

DECIDED AUGUST 14, 2007.

*Williston C. White*, for appellants.
*Fields, Howell, Athans & McLaughlin, Terry R. Howell, Jonathan D. Kramer*, for appellee.