**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**October 20, 2023**

# In the Court of Appeals of Georgia

A23A0934. ALEXANDER et al. v. FRANCIS.

DILLARD, Presiding Judge.

Terrance Kyle Alexander and Capital Gains, LLC, appeal from the trial court's denial of their motion to open default, demand for a jury trial, and motion for partial involuntary dismissal of certain claims brought by Khori Francis, arguing that it erred in doing so. For the following reasons, we affirm in part, vacate in part, and remand this case for further proceedings consistent with this opinion.

On February 25, 2022, Francis filed a verified complaint against Alexander and his company, Capital Gains, seeking a constructive trust, an equitable lien, and an equitable accounting; making claims of unjust enrichment, fraud, conversion, and breach of contract; and requesting an award of punitive damages, attorney fees, and

litigation expenses. The key allegations of the complaint were that Francis provided Alexander and Capital Gains with $5,000 for credit-monitoring services and $37,500 to invest in a luxury van business, but that they did neither and failed to repay him. By stipulation, the trial court extended the time for Alexander and Capital Gains to answer the complaint through April 14, 2022, and a second stipulation extended the time to do so through April 18, 2022.

On April 18, 2022, a Notice of Substitution of Counsel was filed on behalf of both Alexander *and* Capital Gains, replacing the attorney of record with Alexander as the *pro se* representative for both parties. The next day, April 19, 2022, Alexander filed an answer to the complaint on behalf of himself. Francis then filed a motion for default judgment against Capital Gains, noting that it had not yet filed an answer. Francis also filed a motion to strike Alexander's answer and sought default judgment against him because his answer was filed one day after the stipulated deadline *and* his counsel of record had not properly withdrawn from the case, and so his purported *pro se* answer was subject to being stricken as a nullity.

Eventually, new counsel entered an appearance on behalf of Capital Gains and Alexander, and both moved to open the default on July 15, 2022, as a "proper case"

2

for doing so. In an attached affidavit, Alexander averred that he filed his *pro se* answer on April 19 because he believed up until April 18 that the case would settle. He further averred that he did not file an answer on behalf of Capital Gains because he thought it was unnecessary due to the corporation having been administratively dissolved.[1]

In response, Francis argued that Alexander and Capital Gains failed to set forth a meritorious defense that would allow the trial court to exercise its discretion to open the default under the "proper case" standard. More specifically, Francis asserted that Alexander and Capital Gains failed to proffer any facts suggesting a meritorious defense and instead merely relied on conclusory denials. Francis also pointed to Alexander and Capital Gains's failure to timely move to open the default within 15 days.

Following a hearing, the trial court granted the motion to strike and the request for default judgment as to Alexander. The court struck Alexander's answer because

---

[1] Even if Alexander had filed the answer on behalf of Capital Gains, corporations cannot be represented *pro se. See Eckles v. Atlanta Tech. Grp., Inc.*, 267 Ga. 801, 805 (2) (485 SE2d 22) (1997) ("In this state, only a licensed attorney is authorized to represent a corporation in a proceeding in a court of record, including any proceeding that may be transferred to a court of record from a court not of record."); *Columbus Transmission Co. v. Murry*, 277 Ga. App. 243, 244 (1) (626 SE2d 202) (2006) (holding that default judgment was properly granted when registered agent and shareholder filed *pro se* answer on behalf of corporation).

3

it was belatedly filed and done without the necessary fee to open the default. The court further ordered that it would hold a hearing to determine the amount of damages. Likewise, the court granted the motion for default judgment as to Capital Gains with the amount of damages to be determined at a later hearing.

Separately, the trial court denied the motion from Alexander and Capital Gains to open the default judgment. In doing so, the court concluded both parties failed to present a meritorious defense that would allow it to exercise discretion to open the default judgment because they did not provide facts beyond conclusory statements of denial. Alternatively, the court concluded Alexander and Capital Gains failed to move to open the default with reasonable promptness.

Thereafter, Alexander and Capital Gains filed a demand for a jury trial on the issue of damages. The trial court denied the demand, concluding that it was untimely and that they failed to place the issue of damages into question through the filing of a pleading. Alexander and Capital Gains then moved for a partial involuntary dismissal after Francis presented evidence at the final hearing on the matter. The court ultimately denied that motion, finding that it was not made at the appropriate time, and awarded the requested damages to Francis. This appeal follows.

1. Alexander and Capital Gains argue the trial court erred in denying their motion to open default.[2] We disagree.

When this Court reviews the denial of a motion to open default judgment, we are charged with determining "whether the trial court abused its discretion based on the facts peculiar to each case."[3] And under OCGA § 9-11-55,

---

[2] Alexander and Capital Gains do not dispute that they were in default as a matter of law at the time they filed their motion to open the default judgment. *See* OCGA § 9-11-55 (a) ("If in any case an answer has not been filed within the time required by this chapter, the case shall automatically become in default unless the time for filing the answer has been extended as provided by law. The default may be opened as a matter of right by the filing of such defenses within 15 days of the day of default, upon the payment of costs. If the case is still in default after the expiration of the period of 15 days, the plaintiff at any time thereafter shall be entitled to verdict and judgment by default, in open court or in chambers, as if every item and paragraph of the complaint or other original pleading were supported by proper evidence . . . ."); *Willis v. Allstate Ins. Co.*, 321 Ga. App. 496, 498 (740 SE2d 413) (2013) ("[A] defendant in default is in the position of having admitted each and every material allegation of the plaintiff's petition except as to the amount of damages alleged. The default concludes the defendant's liability, and estops him from offering any defenses which would defeat the right of recovery."); *see also H.N. Real Est. Grp., LLC v. Dixon*, 298 Ga. App. 124, 125-26 (679 SE2d 130) (2009) (explaining that plaintiff was "entitled to default judgment as a matter of law" when case was in default after defendant failed to timely file an answer "and certainly after the expiration of the subsequent 15-day period within which a default may be opened as a matter of right").

[3] *Broad. Concepts, Inc. v. Optimus Fin. Servs., LLC*, 274 Ga. App. 632, 634 (1) (618 SE2d 612) (2005) (punctuation omitted).

[a]t any time before final judgment, the court, in its discretion, upon payment of costs, may allow the default to be opened . . . [when] the judge, from all the facts, shall determine that a proper case has been made for the default to be opened, on terms to be fixed by the court. In order to allow the default to be thus opened, the showing shall be made under oath, shall set up a meritorious defense, shall offer to plead instanter, and shall announce ready to proceed with the trial.[4]

Here, the trial court denied the motion to open the default under this standard after concluding Alexander and Capital Gains failed to present a meritorious defense.

In order to present a meritorious defense, a defendant must "set forth facts that show the existence of the essential elements of such defense even though there is no requirement that the affidavit or other sworn statement contain in great detail the factual basis of the proposed defense."[5] Put another way, a defendant meets this

---

[4] OCGA § 9-11-55 (b).

[5] *Water Visions Int'l, Inc. v. Tippett Clepper Assocs., Inc.*, 293 Ga. App. 285, 287 (2) (666 SE2d 628) (2008) (punctuation omitted); *see Exxon Corp. v. Thomason*, 269 Ga. 761, 761 (1) (504 SE2d 676) (1998) ("One of the requirements for the opening of a default is that the defendant establish a meritorious defense."); *Lucas v. Integrated Health Servs. of Lester, Inc.*, 268 Ga. App. 306, 310 (2) (601 SE2d 701) (2004) ("In order to make a 'showing' that a meritorious defense exists, the defendant must set forth facts that show the existence of the essential elements of such defense even though there is no requirement that the affidavit (or verified answer) contain in great detail the factual basis of the proposed defense." (punctuation omitted)).

requirement by "showing that if relief from default is granted, the outcome of the suit may be different from the result if the default stands";[6] and to do so, the defendant must "provide factual information and may not rely solely on conclusions."[7] Indeed, an affidavit framed under this rule "must be very full and explicit."[8]

Once again, Francis's key allegations were that he paid Alexander and Capital Gains $5,000 for credit repair and monitoring services and provided them with $37,500 to invest in a luxury van business, but they did neither with these funds and failed to repay Francis when he requested they do so. Even so, in an affidavit attached to the motion to open default, Alexander admitted Francis provided the alleged amounts but claimed the $5,000 *was* used for credit services and the $37,500 *was* invested into a luxury van purchase. He further asserted that he did not personally receive any portion of the money Francis provided to Capital Gains.

---

[6] *Exxon*, 269 Ga. at 761 (1); *accord Legacy Hills Residential Ass'n, Inc. v. Colonial Bank*, 255 Ga. App. 144, 145 (564 SE2d 550) (2002).

[7] *Exxon*, 269 Ga. at 761 (1); *accord Bowen v. Savoy*, 358 Ga. App. 306, 308 (855 SE2d 60) (2021).

[8] *C. W. Matthews Contracting Co. v. Walker*, 197 Ga. App. 345, 346 (1) (398 SE2d 297) (1990) (punctuation omitted); *accord Glob. Assocs., Inc. v. Pan Am. Commc'ns, Inc.*, 163 Ga. App. 274, 275 (1) (b) (293 SE2d 481) (1982) (quoting 1 Black on Judgments (2nd Ed.) 539, § 347).

General denials are, of course, "insufficient to establish a meritorious defense."[9] So, while a defaulting party need not provide "great detail," they must provide *some* detail beyond general denials.[10] And here, Alexander and Capital Gains did not provide sufficient detail in either Alexander's affidavit or the proposed answer

---

[9] *Water Visions Int'l*, 293 Ga. App. at 630 (2); *see Sprewell v. Thompson & Hutson, S.C., LLC*, 260 Ga. App. 312, 313 (1) (581 SE2d 322) (2003) ("In such affidavit, the only attempt counsel made in setting out a defense was a general denial that [defendant] was not indebted to [the plaintiff]. Such conclusionary statements cannot constitute the showing of a meritorious defense.").

[10] *See Exxon Corp.*, 269 Ga. at 762 (2) (concluding that defendant, despite admitting to having a petroleum tank leak, detailed sufficient facts to contradict the "sweeping allegations of the complaint" when defendant submitted sworn affidavits and documents that detailed circumstances surrounding the leak, including various dates); *Bowen*, 358 Ga. App. at 310 (holding that defendant's "affidavits explain in some detail how her mother's money was used and expressly deny any diversion for personal use" and that "[t]he facts detailed in [the] affidavits contradict many of the allegations in the complaint and establish a factual defense to [plaintiff's] claims of breach of fiduciary duty, conversion, and money had and received" when the affidavits included paragraphs detailing dates and specific actions taken by the defendant); *Mars, Inc. v. Moore*, 207 Ga. App. 912, 913 (429 SE2d 299) (1993) (physical precedent only) ("[Defendant's] counsel testified by affidavit that evidence would be presented showing that the can in question was not manufactured by [defendant in case regarding claims of negligence]. His affidavit was based upon his investigation of the case, and satisfied the requirement that a party seeking to open a default make a showing that there is a meritorious defense.").

8

attached as an exhibit to the motion to open default.[11] Instead, Alexander's

assertions—that the money provided to Capital Gains *was* used for credit services and

an investment in luxury vans—at best amount to general denials of Francis's claims

and do not *factually* establish a meritorious defense.[12] Indeed, neither the affidavit nor

[11] *See Barone v. McRae & Holloway, P.C.*, 179 Ga. App. 812, 814 (2) (348 SE2d 320) (1986) ("[T]he late answer is little more than a general denial and does not present what could reasonably be characterized as a meritorious defense."); *cf. La Mara X, Inc. v. Baden*, 340 Ga. App. 592, 596-97 (2) (a) (798 SE2d 105) (2017) ("Together with its motion to open default, [defendant] raised a meritorious defense. [Defendant] presented an affidavit . . . , made under oath, in which [the restaurant owner] averred that he had information that no customer had slipped and fallen at the restaurant. Further, [defendant] filed an answer in which it asserted numerous defenses to [plaintiff's] claims, including that it acted with reasonable and ordinary care, that it did not cause or contribute to the alleged injuries, that the decedent failed to exercise ordinary care, that the act that allegedly caused the decedent's death was unforeseeable, that the decedent voluntarily assumed the risk, and that there was no dangerous condition on the premises at the time."); *Pinehurst Baptist Church, Inc. v. Murray*, 215 Ga. App. 259, 261-62 (1) (450 SE2d 307) (1994) ("In its proposed answer, defendant asserts that at the time of the incident in issue, the equipment from which [plaintiff] fell was not inherently dangerous and that defendant had no knowledge that said equipment could be dangerous. Additionally, defendant asserts that it was not negligent and that there was adequate supervision on the playground at the time of the incident. These assertions are sufficient to meet the requirement that a meritorious defense be explicitly stated under oath.").

[12] *See Butterworth v. Safelite Glass Corp.*, 287 Ga. App. 848, 850 (1) (652 SE2d 877) (2007) ("In the case at bar, however, [defendant's] affidavit is completely devoid of facts and details that would provide a defense to the action. [Defendant] merely asserts that the amount sought by [plaintiff] is not the 'true' amount owed. [Defendant] provided no basis for the trial court to determine that a meritorious

9

attached proposed answer explained in *some detail* how Francis's money was used (*e.g.*, exactly what services were provided, dates of when services were rendered) or invested (*e.g.*, when investments were made, how many vans were purchased).[13]

defense had been factually raised. At best, the affidavit amounts to a general denial that [defendant] is indebted to [plaintiff] for the full amount claimed." (punctuation & footnote omitted)).

[13] *Cf. Bowen*, 358 Ga. App. at 310 (concluding that defendant established a meritorious defense when her affidavits "explain[ed] *in some detail*" (within several quoted paragraphs) how the assets at issue were used and thus contradicted many of the allegations in the complaint); *Leeper v. Safebuilt Ga., Inc.*, 353 Ga. App. 121, 124 (1) (a) (836 SE2d 625) (2019) (holding that averment defendant "provided inspections properly" was conclusory and insufficient for meritorious defense, but averment that "negligent construction claims [were] inapplicable" to defendant "due to the nature of [defendant's] business and services and lack of privity"—combined with a contract attached as an exhibit to the affidavit—were sufficient to demonstrate a meritorious defense); *Summerville v. Innovative Images, LLC*, 349 Ga. App. 592, 604 (2) (a) (826 SE2d 391) (2019) ("The . . . [d]efendants asserted that the case was subject to arbitration in their amended verified answer, and the authenticated Engagement Agreement containing the Arbitration Clause was attached as an exhibit to the sworn affidavit of [a defendant]."), *affirmed by* 309 Ga. 675 (848 SE2d 75) (2020), *disapproved of on other grounds by Bowen v. Savoy*, 308 Ga. 204 (839 SE2d 546) (2020).

As a result, because the failure to plead a meritorious defense is "alone fatal to the opening of a default,"[14] we agree with the trial court that it was without discretion to grant Alexander and Capital Gains's motion to open the default.

2. Next, Alexander and Capital Gains contend the trial court erred in denying their demand for a jury trial on damages. Again, we disagree.

The trial court denied Alexander and Capital Gains's demand for a jury trial on damages because it was untimely and they were no longer "in default" at the time of filing it—a judgment having been already entered on the matter of liability. We review the trial court's conclusion in this regard *de novo* for plain legal error by looking to the language of the relevant statute.[15]

---

[14] *Forrister v. Manis Lumber Co.*, 232 Ga. App. 370, 373 (3) (501 SE2d 606) (1998) (punctuation omitted); *accord Exxon Corp.*, 269 Ga. at 762 (2); *Sprewell*, 260 Ga. App. at 313 (1).

[15] *See Pure Hosp. Sols., Inc. v. Canouse*, 347 Ga. App. 592, 594 (820 SE2d 434) (2018) (applying "plain legal error" standard and conducting *de novo* review of question of law related to entry of default judgment); *Hill v. First Atl. Bank*, 323 Ga. App. 731, 732 (747 SE2d 892) (2013) ("On appeal, we review the lower court's interpretation of a statute de novo, as statutory interpretation is a question of law.").

We necessarily begin our analysis with "familiar and binding canons of construction."[16] And in considering the meaning of a statute, our charge as an appellate court is to "presume that the General Assembly meant what it said and said what it meant."[17] As a result, we must afford the statutory text its plain and ordinary meaning,[18] consider the text contextually,[19] read the text "in its most natural and

[16] *Monumedia II, LLC v. Dep't of Transp.*, 343 Ga. App. 49, 51 (1) (806 SE2d 215) (2017) (punctuation omitted); *accord Holcomb v. Long*, 329 Ga. App. 515, 517 (1) (765 SE2d 687) (2014); *In the Interest of L. T.*, 325 Ga. App. 590, 591 (754 SE2d 380) (2014).

[17] *Monumedia II, LLC*, 343 Ga. App. at 51-52 (1) (punctuation omitted); *accord Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013); *Holcomb*, 329 Ga. App. at 517 (1); *Martinez v. State*, 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013).

[18] *Holcomb*, 329 Ga. App. at 517 (1); *accord* Deal, 294 Ga. at 172 (1) (a); *see Tibbles v. Teachers Retirement Sys. of Ga.*, 297 Ga. 557, 558 (1) (775 SE2d 527 (2015) ("A statute draws its meaning, of course, from its text." (punctuation and citation omitted)); *Chan v. Ellis*, 296 Ga. 838, 839 (1) (770 SE2d 851) (2015) (same); *State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies) . . . ."); *Singletary v. State*, 310 Ga. App. 570, 572 (713 SE2d 698) (2011) ("In construing these statutes, we apply the fundamental rules of statutory construction that require us to construe the statutes according to their terms, [and] to give words their plain and ordinary meaning . . . ." (punctuation omitted)).

[19] *Monumedia II, LLC*, 343 Ga. App. at 52 (1); *see Arizona v. Inter Tribal Council of Arizona, Inc.*, 1 U.S. 10 (II) (B) (133 SCt 2247, 186 LE2d 239) (2013) ("Words that can have more than one meaning are given content, however, by their surroundings."

reasonable way, as an ordinary speaker of the English language would,"[20] and seek to "avoid a construction that makes some language mere surplusage."[21] Simply put, when the language of a statute is "plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly."[22]

Looking to the statute at issue, OCGA § 9-11-55 provides, in relevant part, that "in the event a defendant, though in default, has placed damages in issue by filing a pleading raising such issue, either party shall be entitled, upon demand, to a jury trial of the issue as to damages."[23] And in this case, at the point in which Alexander and

---

(punctuation omitted)) (Scalia, J.); *Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *see also Tibbles*, 297 Ga. at 558 (1) ("The common and customary usages of the words are important, but so is their context." (punctuation and citation omitted)).

[20] *Monumedia II, LLC*, 343 Ga. App. at 52 (1) (punctuation omitted); *accord Deal*, 294 Ga. at 172-73 (1) (a); *Holcomb*, 329 Ga. App. at 518 (1).

[21] *Monumedia II, LLC*, 343 Ga. App. at 52 (1) (punctuation omitted); *accord In the Interest of L.T.*, 325 Ga. App. at 592; *Holcomb*, 329 Ga. App. at 518 (1).

[22] *Monumedia II, LLC*, 343 Ga. App. at 52 (1) (punctuation omitted); *accord Holcomb*, 329 Ga. App. at 518 (1); *Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397 (2013); *see Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)).

[23] OCGA § 9-11-55 (a).

13

Capital Gains filed their demand for a jury trial on damages, the trial court had already denied their motions to open default and entered default judgment against them on the issue of liability. As a result, Francis argues—and the trial court agreed—that both were no longer "in default" at the time they demanded a jury trial on damages.

Even so, Alexander and Capital Gains rely on *Follmer v. Perry*[24] in support of their demand for a jury trial on damages being timely under OCGA § 9-11-55 (a), despite being filed *after* entry of default judgment on liability. But Francis contends this case is inapposite because the defendant in *Follmer* filed a demand for jury trial on damages *prior* to the entry of default judgment.[25] And while we agree with Francis that

---

[24] 229 Ga. App. 257 (493 SE2d 631) (1997).

[25] *See id.* at 259 (2) (explaining that defendant "placed damages in issue by filing his motion to open default *with* his proposed answer *and* by filing a demand for jury trial on the issue of damages" (emphasis supplied)); *see also Ingram v. State Farm Mut. Auto. Ins. Co.*, 353 Ga. App. 221, 221 (836 SE2d 215) (2019) (explaining that defendants, whose answer was struck as a discovery sanction, filed a "Pleading Pursuant to OCGA § 9-11-55 (a)" following the court's finding of them in default as a sanction); *cf. Stephenson v. Wildwood Farms, Inc.*, 194 Ga. App. 728, 729 (2) (391 SE2d 706) (1990) (holding that appellant never made a demand for jury trial on the issue of damages because an "[e]xamination of the record in its totality reveals that appellant included a demand for trial by jury as to the entire proceedings in his belated answer, and that he used this demand, during the subsequent hearing, in support of his motion for opening of default" but because "the trial judge denied appellant's motion to open default and to file answer, as therein prayed, the purported filing of the answer by the clerk of courts was a nullity").

this case is factually inapposite, we do not believe *Follmer* forecloses Alexander and

Capital Gains's argument on this particular question.[26]

Our analysis begins with OCGA § 9-11-55 (a), which must be read *in pari*

*materia* with OCGA § 9-11-55 (b).[27] Under OCGA § 9-11-55 (b), "[a]t any time *before*

---

[26] Likewise, *Sam's Wholesale Club v. Riley*, 241 Ga. App. 693 (527 SE2d 293) (1999), does not provide the answer to the precise question we face. In *Riley*, the appellant argued the trial court erred in denying its demand for a jury trial on the issues of compensatory and punitive damages. *Id.* at 697 (6). The trial court had already granted the plaintiff's motion for default judgment and held a hearing and made a determination on compensatory damages when it filed an answer, motion to open default judgment, and demand for a jury trial. *Id.* at 694-95. The issue was *not* whether the trial court appropriately granted the demand for a jury trial on punitive damages as requested but, instead, whether the trial court should have also granted the request on the issue of compensatory damages. *See id.* at 697 (6). On that question, we concluded the trial court appropriately denied the demand for a jury trial because it was untimely as the trial court had already issued a judgment as to compensatory damages. *Id.* The issue here is, of course, different.

[27] *See Goldberg v. State*, 282 Ga. 542, 546 (651 SE2d 667) (2007) ("A statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes 'in pari materia,' are construed together, and harmonized wherever possible . . . ." (punctuation omitted)); *Schick v. Bd. of Regents of Univ. Sys. of Ga.*, 334 Ga. App. 425, 432 (1) (779 SE2d 452) (2015) ("In particular, statutes 'in pari materia', i.e., statutes relating to the same subject matter, must be construed together." (punctuation omitted)); *see also Scherr v. Marriott Intern., Inc.*, 703 F.3d 1069, 1077 (II) (C) (2) (7th Cir. 2013) (Manion, J.) ("In statutory construction cases, we begin with the language of the statute itself and the specific context in which that language is used." (citation and punctuation omitted)).

*final judgment*, the court, in its discretion, upon payment of costs, may allow the default to be opened"[28] for various reasons upon appropriate showings by the defaulting party. And looking to the plain language of OCGA § 9-11-55 (b), a defendant remains "in default" *before final judgment.* Indeed, as we have repeatedly held, the entry of default judgment on the issue of liability alone is *not* a final judgment for purposes of OCGA § 9-11-55 (b).[29]

So, while Francis is correct that once a default judgment is set aside, "the case returns to the posture it occupied prior to the entry of the default judgment, which

---

[28] (Emphasis supplied).

[29] *See, e.g.*, *Larkin v. Madison Cnty. Sch. Dist.*, 364 Ga. App. 10, 15 (3) (873 SE2d 471) (2022) ("A trial court's entry of a default judgment as to the issue of liability only which leaves the issue of damages to be adjudicated is not a 'final judgment' since it does not dispose of the entire controversy between the parties." (punctuation omitted)); *Feazell v. Gregg*, 270 Ga. App. 651, 652 (1) (a) (607 SE2d 253) (2004) ("When the trial court originally entered the default judgment, it did so with the caveat that 'the matter shall be placed on the next non-jury calendar for the issue of damages.' This default judgment was therefore not a final judgment for purposes of OCGA § 9-11-55 (b)." (punctuation omitted)); *Cryomedics, Inc. v. Smith*, 180 Ga. App. 336, 337 (349 SE2d 223) (1986) ("OCGA § 9-11-54 (b) cannot be used to bifurcate the same claim into two issues—liability and damages—so as to transform a ruling strictly on the issue of liability into a final judgment, representing final judicial action and the vesting of rights, within the meaning of OCGA § 9-11-55 (b).").

16

posture is usually that of being in default,"[30] we do not agree that entry of default judgment *as to liability alone* means a defendant is no longer "in default." To the contrary, in the cases in which we have used the foregoing language, a *final* judgment as to both liability and damages was set aside, thereby placing a party back "in default" for purposes of OCGA § 9-11-55 (b).[31]

Thus, looking to both the plain language of OCGA § 9-11-55 (a) and (b) and our precedent in this area of law, we conclude Alexander and Capital Gains were still "in default" for purposes of filing a demand for a jury trial on damages under OCGA § 9-

---

[30] *Robinson v. Moonraker Assocs., Ltd.*, 205 Ga. App. 597, 598 (423 SE2d 44) (1992); *accord P.H.L. Dev. Corp. v. Smith*, 174 Ga. App. 328, 328 (1) (329 SE2d 545) (1985); *see Samsung Elecs. Am., Inc. v. Brewer*, Case No. A23A0452, 2023 WL 4284619, at *3 (Ga. Ct. App. June 30, 2023) (citing *Robinson* and quoting the relevant language in a parenthetical); *see also Bank of Cumming v. Moseley*, 243 Ga. 858, 858-59 (257 SE2d 278) (1979) ("When a default judgment has been granted and is then set aside . . . , the case returns to the posture it occupied prior to the default judgment, and the defendant must file responsive pleadings to avoid defaulting a second time.").

[31] *See Robinson*, 205 Ga. App. at 597-98 ("No answer was timely filed, and a default judgment was entered in favor of the [plaintiffs] for $96,976."); *Smith*, 174 Ga. App. at 328 ("A default judgment in the amount of $58,864.82 was entered against appellee . . . due to appellee's failure to file timely defensive pleadings."); *see Brewer*, Case No. A23A0452, 2023 WL 4284619, at *1 (explaining that defendant moved to set aside default judgment after judgment was entered on liability and then later on the issue of damages).

17

11-55 (a) because at the time the demand was filed, default judgment had only been granted on the issue of liability.

Nevertheless, even if the demand had been timely filed, there is still a question of whether Alexander and Capital Gains "placed damages in issue by filing a pleading raising such issue."[32] We conclude they did not.

Capital Gains never filed an answer even belatedly, and the belated *pro se* answer filed by Alexander did not place damages "in issue" as that phrase is contemplated by our cases.[33] As we have previously explained, the plain language of OCGA § 9-11-55 (a) dictates that a defendant in default is "entitled to a jury trial if (1) he has placed damages in issue by *filing* a *pleading* raising that issue, and (2) he has made a demand

---

[32] OCGA § 9-11-55 (a).

[33] *See Diaz v. Wills*, 286 Ga. App. 357, 359 (649 SE2d 353) (2007) (Ellington, J.) ("[A] pleading that disputes damages might contest the amount owed, the method of computation, or whether and to what extent any right of set off may be applicable. Neither of [the defendant's] documents is in the nature of an answer, and neither actually disputes the amount of damages claimed by the [plaintiffs] in any respect. Consequently, neither suffices as a pleading placing damages in issue under OCGA § 9-11-55 (a), and the state court did not err in so holding.").

for a jury trial."[34] Here, no such pleading was actually filed.[35] Although a *proposed* answer was attached to Alexander and Capital Gains's motion to open default judgment as an exhibit, that motion was denied, and the proposed answer was never filed as a separate pleading.[36]

---

[34] *Id.* (emphasis supplied).

[35] *See id.* at 359 ("[A] pleading that disputes damages might contest the amount owed, the method of computation, or whether and to what extent any right of set off may be applicable. Neither of [the defendant's] documents is in the nature of an answer, and neither actually disputes the amount of damages claimed by the [plaintiffs] in any respect. Consequently, neither suffices as a pleading placing damages in issue under OCGA § 9-11-55 (a), and the state court did not err in so holding."); *cf. Ingram*, 353 Ga. App. at 221 (explaining that "[f]ollowing the default, the defendants filed a 'Pleading Pursuant to OCGA § 9-11-55 (a),' through which they 'contested all damages allegedly sustained by [the plaintiff], specifically denied that [the plaintiff] had suffered any damages, and demanded a trial by jury . . . on the issue of damages'" (punctuation omitted)).

[36] *See Russaw v. Burden*, 272 Ga. App. 632, 634 (1) (612 SE2d 913) (2005) (holding that trial court did not err in denying motion for default judgment and holding trial on the issue of proximate cause and damages when defendant—though belatedly and after the period for opening default as a matter of right—filed "an answer disputing damages and demanding a jury trial," and answer was filed prior to the plaintiff's motion for default judgment); *cf. Jones v. Christian*, 165 Ga. App. 165, 165 (2) (300 SE2d 1) (1983) ("Appellant's argument that cases heard on contract where an issuable defense is filed require trial by jury unless waived is moot since the defensive pleadings were properly [stricken as a sanction for failure to appear when the case was called for trial]. Appellant's contention that this proposition does not apply when a formal demand for jury trial has been made as in the instant case is without merit. The effect of the trial court's order striking the answer was to remove

Nevertheless, Alexander and Capital Gains contend that under *Follmer v. Petty*,[37] the proposed answer attached to their motion to open default was a sufficient pleading under OCGA § 9-11-55 (a). But we are unpersuaded by the vague language from *Follmer* upon which they hinge their argument.

In *Follmer*, we explained that the party in default "placed damages in issue by filing his motion to open default with his proposed answer and by filing a demand for jury trial on the issue of damages [the next day]."[38] But nothing in *Follmer* explicitly says the "proposed answer" was attached as an exhibit rather than separately—though belatedly—filed. And more importantly, under the plain language of our Civil Practice Act, "[n]o other pleadings may be allowed," save for those delineated by OCGA § 9-11-7 (a), which provides as follows:

> There shall be a complaint and an answer; a third-party complaint, if a person who is not an original party is summoned under Code Section 9-11-14; and a third-party answer, if a third-party complaint is served.

the whole defensive pleading. There being then no answer to the complaint and no further action by appellant, default judgment was properly entered." (punctuation & citations omitted)).

[37] 229 Ga. App. 257 (493 SE2d 631) (1997).

[38] *Id.* at 260 (2); *see id.* at 258 (noting the demand for a jury trial was filed the day after the demand for a jury trial on damages).

20

There may be a reply to a counterclaim denominated as such and an answer to a cross-claim, if the answer contains a cross-claim. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer.

Suffice it to say, an exhibit attached to a motion cannot possibly be a pleading within the meaning of OCGA § 9-11-7 (a) when motions are not even considered pleadings under the statute.[39]

---

[39] *See Chandler v. Opensided MRI of Atlanta, LLC*, 299 Ga. App. 145, 148 (2) (a) n.5 (682 SE2d 165) (2009) ("A motion is not a pleading; pleadings are defined as seven specific filings, including a 'complaint' and an 'answer.' A motion is an application to the court for an order, and unless made during a hearing or trial, it shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought." (citations and punctuation omitted)), *affirmed by* 287 Ga. 406 (696 SE2d 640) (2010); *Bosworth v. Cooney*, 156 Ga. App. 274, 277 (2) (274 SE2d 604) (1980) ("A motion is not a pleading."); *see also United States ex rel. McFarland v. Fla. Pharmacy Sols.*, 358 FSupp3d 1316, 1322 (M.D. Fla. 2017) (noting that a motion is not a pleading under Federal Rules of Civil Procedure).

Although we concluded in *Ingram*, cited *supra*, that a defendant in default placed damages in issue by filing a document styled a "Pleading Pursuant to OCGA § 9-11-55 (a)," we question the viability of such a procedural vehicle. In that case, the defendant's answer was struck as a discovery sanction, *Ingram*, 353 Ga. App. at 221; and OCGA § 9-11-7 does *not* include a "Pleading Pursuant to OCGA § 9-11-55 (a)" as one of the listed pleadings. Of course, there is "no magic in the nomenclature given a pleading," *Bosworth*, 156 Ga. App. at 278, and instead "it is the substance of the pleadings that determines its nature," *id.* But the only "pleading" logically contemplated by OCGA § 9-11-55 (a) is an answer. Nevertheless, we need not revisit *Ingram's* holding when no such filing is at issue here.

21

Accordingly, no pleading placing damages in issue was filed as required by OCGA § 9-11-55 (a);[40] and so, the trial court did not err in denying Alexander and Capital Gains's demand for a jury trial on damages.

3. Finally, Alexander and Capital Gains argue the trial court erred in denying their motion for a partial involuntary dismissal as to punitive damages and "certain attorney's fees" under OCGA § 9-11-41 (b). But because they do not contest the court's denial of this motion as to the other matters raised in that motion, we only address the two specific issues they *do* argue on appeal.[41]

---

[40] *See* OCGA § 9-11-5 (e) ("The filing of pleadings and other papers with the court as required by this chapter shall be made by filing them with the clerk of the court, except that the judge may permit the papers to be filed with him, in which event he shall note thereon the filing date and forthwith transmit them to the office of the clerk.").

[41] *See Grogan v. City of Dawsonville*, 305 Ga. 79, 89 (4) n.7 (823 SE2d 763) (2019) (explaining that the Court will not address potential issue or argument that appellant did not raise on appeal); *Rollins v. Legg*, 179 Ga. 85, 85 (2) (175 SE 382) (1934) ("The petition prayed for attorney's fees on account of bad faith and litigiousness on the part of the sheriff. The plaintiff in his brief does not argue his alleged right to an award of attorney's fees, and this feature of the case is treated as having been abandoned."); *Jones v. Bd. of Regents of the Univ. Sys. of Ga.*, 262 Ga. App. 75, 79 (3) (585 SE2d 138) (2003) (deeming issue not argued on appeal abandoned).

OCGA § 9-11-41 (b) provides that "[a]fter the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief."[42] And here, the record shows that after Francis presented evidence at the final hearing on the question of damages, Alexander and Capital Gains presented no evidence but orally moved for partial involuntary dismissal of claims under OCGA § 9-11-41 (b). The trial court did not rule on damages at the hearing and instead asked the parties to submit written arguments on the issue along with proposed orders. As a result, Alexander and Capital Gains filed a written motion under OCGA § 9-11-41 (b) after the final hearing.

---

[42] *See Rice v. Lost Mountain Homeowners Ass'n, Inc.*, 269 Ga. App. 351, 357 (8) (604 SE2d 215) (2004) ("The appropriate procedure at the close of plaintiff's evidence [in a bench trial] would be to move for involuntary dismissal on the grounds that upon the facts and the law the plaintiff has shown no right to relief . . . ."(punctuation omitted)); *Drake v. Wallace*, 259 Ga. App. 111, 112 (2) (576 SE2d 87) (2003) ("[I]n a non-jury case, it is procedurally incorrect to move for a directed verdict; and such a motion (as well as the grant thereof) will be treated as one for involuntary dismissal under Section 41(b) of the Civil Practice Act." (punctuation omitted)).

In its final order on the matter, in which it awarded the requested damages and attorney fees, the trial court denied Alexander and Capital Gains's motion under OCGA § 9-11-41 (b) because it was an "improper procedural vehicle at this stage of the proceedings." In the alternative, the trial court found they were not entitled to dismissal because Francis's claims were "properly supported by factual allegations" that were admitted by virtue of default. Alexander and Capital Gains claim the trial court erred in reaching both of these conclusions.

(a) *Punitive damages.* We have previously considered denials of motions for new trial made on the issue of damages awarded in default judgments,[43] and so we conclude Alexander and Capital Gains were not procedurally barred from challenging (during the hearing) whether a request for punitive damages was well pleaded such that those damages were warranted.[44] Indeed, in any case in which punitive damages are claimed,

---

[43] *See Hill v. Johnson*, 210 Ga. App. 824, 825-26 (437 SE2d 801) (1993) (considering denial of defaulting party's motion for new trial filed after hearing and final judgment on damages in case in which default judgment on liability was previously entered); *Drug Emporium, Inc. v. Peaks*, 227 Ga. App. 121, 123 (488 SE2d 500) (1997) (considering denial of defaulting party's motion for new trial after court submitted the issue of punitive damages to a jury at a trial solely focused on damages when default judgment was previously granted as to liability).

[44] *See* OCGA § 9-11-41 (b) ("After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without

the trier of fact "shall first resolve from the evidence produced at trial whether an award of punitive damages shall be made."[45]

Here, the issue of punitive damages *was* well pleaded. Francis's complaint included a separate count for punitive damages that incorporated by reference all previous counts in the complaint and alleged, *inter alia*, that Alexander and Capital Gains's refusal to properly invest Francis's funds or return them, and to provide the credit services or return the funds provided for those services, "demonstrate[s] willful misconduct, malice, fraud, wantonness, oppression or a conscious indifference to the reasonable and foreseeable consequences of their actions within the meaning of OCGA § 51-12-5.1 (b)." Francis also requested such damages "in an amount to be

---

waiving his right to offer evidence in the event the motion is not granted, may move for *dismissal on the ground that* upon the facts and the law the *plaintiff has shown no right to relief.*" (emphasis supplied)); *ServiceMaster Co., L.P. v. Martin*, 252 Ga. App. 751, 752-53 (1) (556 SE2d 517) (2001) ("The default concludes the defendant's liability and estops him from offering any defenses which would defeat the right of recovery. However, while the default . . . operates as an admission by [the defendant] of the well-pled factual allegations in [the plaintiff's] complaint and amended complaint, it does not admit allegations not well pled, forced inferences, or conclusions of law. *The default does not preclude [the defendant] from showing that under the facts as deemed admitted, no claim existed which would allow [the plaintiff] to recover.*" (emphasis supplied) (footnotes omitted)); *see also* OCGA § 51-12-5.1 (d) (1) ("An award of punitive damages must be specifically prayed for in a complaint.").

[45] OCGA § 51-12-5.1 (d) (1).

determined at trial based upon [Alexander and Capital Gains's] actions." As a result, punitive damages were permitted.[46]

But Alexander and Capital Gains also maintain the trial court's award of punitive damages is unsupported by the evidence.[47] Specifically, they assert Francis

---

[46] *See Hill*, 210 Ga. App. at 825 (concluding that "[t]he allegations in the complaint summarized above, including the statement that 'such actions merit the award of punitive damages to plaintiff under OCGA § 51-12-5.1' must be taken 'as if every item and paragraph of the complaint . . . were supported by proper evidence,' coupled with the default judgment granting judgment to [the plaintiff] on liability, are sufficient to satisfy the requirement in OCGA § 51-12-5.1 (d) that 'the trier of fact shall first resolve from the evidence produced at trial whether an award of punitive damages shall be made" (citation omitted)); *Floyd v. First Union Nat'l Bank of Ga.*, 203 Ga. App. 788, 789 (1) (417 SE2d 725) (1992) (holding that trial court erred in excluding plaintiff–appellant's evidence in support of punitive damages after holding defendant in default as to liability when "[a]ppellants specifically prayed for both punitive damages and attorney fees in an amount to be determined at trial," and thus, "the demand for judgment both as to punitive damages and attorney fees was 'open-ended'" but proper because plaintiff–appellants were not required to request a specific dollar amount); *cf. Drug Emporium*, 227 Ga. App. at 127-28 (c) (distinguishing case from the facts in *Hill* and holding that "because no evidence on liability for punitive damages was presented at the hearing, appellee['s] . . . entitlement to punitive damages depends solely upon the allegations in her complaint" and because "the complaint averred no viable claim for punitive damages, the default alone was not sufficient to authorize an award of punitive damages").

[47] *See* OCGA § 15-12-5.1 (d) (2) ("If it is found that punitive damages are to be awarded, the trial shall immediately be recommenced in order to receive such evidence as is relevant to a decision regarding what amount of damages will be sufficient to deter, penalize, or punish the defendant in light of the circumstances of the case.").

failed to present sufficient evidence in support of an award of punitive damages—namely, evidence of their "income or assets or anything else that would allow the Court to determine an appropriate amount of punitive damages"—and that the court instead arbitrarily granted Francis a $13,000 award of such damages. But this is not the standard applied to awards for punitive damages.

Instead, when punitive damages are to be awarded, the trier of fact is to "assess evidence regarding what amount of damages will be sufficient to deter, penalize, or punish the defendant *in light of the circumstances of the case*."[48] Thereafter, the proper amount of punitive damages is "based on the enlightened conscience of the trier of fact, and on appeal, an award will not be disturbed unless it is so excessive or

---

[48] *Cotto L. Grp., LLC v. Benevidez*, 362 Ga. App. 850, 858 (2) (a) (870 SE2d 472) (2022) (punctuation omitted) (emphasis supplied); *see Scott v. Battle*, 249 Ga. App. 618, 621 (3) (548 SE2d 124) (2001) ("In Georgia, the purpose of punitive damages is to deter the repetition of reprehensible conduct by the defendant, and they are not awarded as compensation to a plaintiff." (footnotes omitted)); *see also Bearoff v. Craton*, 350 Ga. App. 826, 845-47 (7) (830 SE2d 362) (2019) (considering the nature of the defendant's conduct with regard to the claims brought against the defendant and upholding the trial court's award of $50,000 in punitive damages after a bench trial).

inadequate as to shock the judicial conscience to the degree that a judgment entered thereon constitutes an error of law."[49]

Here, Alexander and Capital Gains do not argue the punitive damages imposed by the trial court are excessive, and we conclude the award does not meet the high standard necessary for disturbing such an award.[50] This portion of the enumerated error, then, is without merit.

(b) *Attorney fees.* The trial court also awarded Francis attorney fees and costs of litigation under OCGA § 13-6-11 in the amount of $18,345.47. And just as they did below, Alexander and Capital Gains solely argue that there was no evidence that

---

[49] *Cotto L. Grp.*, 362 Ga. App. at 858 (2) (a) (punctuation omitted); *accord Wilson Welding Serv. v. Partee,* 234 Ga. App. 619, 620 (507 SE2d 168) (1998) ("The amount of this type of damages is based on the enlightened conscience of the jury, or in this case, the court. An award of punitive damages will not be disturbed on appeal unless it is so excessive or inadequate as to shock the judicial conscience to the degree that a judgment entered thereon constitutes an error of law." (punctuation & footnotes omitted)), *overruled on other grounds by Shields v. Gish*, 280 Ga. 556 (629 SE2d 244) (2006).

[50] *See Cotto L. Grp.*, 362 Ga. App. at 858 (2) (a) ("[A]n award will not be disturbed unless it is so excessive or inadequate as to shock the judicial conscience to the degree that a judgment entered thereon constitutes an error of law.").

$5,000 of that award was reasonable when that portion was for the services of "an unnamed project attorney."[51] .

To begin with, because Francis placed Alexander and Capital Gains on notice that he would be seeking attorney fees and costs of litigation under OCGA § 13-6-11 in his complaint, and default judgment was subsequently entered against them for their failure to answer, Francis was "entitled to an award of attorney fees and expenses as a matter of law from the defendant having caused unnecessary trouble and expense."[52] The court did not err, then, in awarding fees under OCGA § 13-6-11.

---

[51] As on appeal, this was the *only* aspect of the requested $18,345.47 in attorney fees and expenses that Alexander and Capital Gains challenged below. Once again, we will not address any other aspects of the award of attorney fees and expenses of litigation that have not been explicitly raised on appeal. *See Grogan*, 305 Ga. at 89 (4) n.7 (explaining that the Court will not address potential issue or argument that appellant did not raise on appeal); *Rollins*, 179 Ga. at 85 (2) ("The petition prayed for attorney's fees on account of bad faith and litigiousness on the part of the sheriff. The plaintiff in his brief does not argue his alleged right to an award of attorney's fees, and this feature of the case is treated as having been abandoned."); *Jones*, 262 Ga. App. at 79 (3) (deeming issue not argued on appeal abandoned).

[52] *Water's Edge Plantation Homeowner's Ass'n, Inc. v. Reliford*, 315 Ga. App. 618, 620 (727 SE2d 234) (2012); *see* OCGA § 13-6-11 ("The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."); *accord Cotto L. Grp.*, 362 Ga. App. at 859 (2).

29

As to the total amount awarded, Alexander and Capital Gains contend there was no evidence that the alleged $5,000 Francis's attorney paid to a project attorney for research was reasonable. More specifically, they assert there was no evidence of the unnamed attorney's qualifications, experience, hours worked, or rate charged.

At the hearing, Francis's attorney testified that her requested amount of fees and expenses included "project attorney expenses of about $5,000 . . . that were passed through directly as [an] expense for Mr. Francis for research and writing assistance." She further testified, on cross examination, that the project attorney conducted research because she does not have an associate. Francis's attorney did not know the number of hours the project attorney worked because they gave her a fixed rate per project. She believed the project attorney charged "approximately [$]1,500 relating to the jury demand" with "the remaining research . . . related to issues more specific to the default motions." Finally, counsel said she "could provide a specific breakdown" of the project attorney's work but that she could not recall further details at that time. No such breakdown appears in the record.[53]

---

[53] Following the trial court's final order and the filing of the notice of appeal, the record shows that Francis's attorney filed a motion for supersedeas bond and motion for additional attorney fees and expenses of litigation under OCGA § 9-15-14. In support, counsel submitted an affidavit and billing statements from throughout the

Francis responds by asserting the project attorney's involvement amounted to an expense and thus the cost was not attorney fees for which a showing of reasonableness was necessary. But his sole citation in support of this proposition, *Garland, Samuel & Loeb, P.C. v. American Safety Casualty Insurance Co.*,[54] is inapposite. That case concerned an alleged breach by a professional liability insurer.[55] Indeed, Francis relies only on the first sentence of the following paragraph from that case:

> "[e]xpenses incurred by a lawyer for maintaining his office, hiring secretaries, investigators, consultants, expert witnesses, and associates are incidental to a lawyer's business. His failure to pay either the cost of, or reasonable value for, such business expenses cannot rationally be

history of the litigation. We have *not* considered those filings because this evidence was not before the trial court when it made its award of attorney fees and expenses of litigation in the final order. *See, e.g.*, *Patel v. Kensington Cmty. Ass'n, Inc.*, 340 Ga. App. 896, 898, 797 S.E.2d 235, 237 (2017) ("We cannot consider this evidence in our review of the trial court's summary judgment ruling because this evidence was not before the trial court when the court ruled."); *Brende v. Brende*, 330 Ga. App. 556, 557 (2) (768 SE2d 531) (2015) (physical precedent only) ("It is an ancient and honored tenet of law that we do not take evidence from the briefs of the parties, we do not get evidence from outside the record, and we do not accept assertions of fact or evidence which were not before the trial court." (punctuation omitted)).

[54] 287 Ga. App. 254 (651 SE2d 177) (2007).

[55] *See id.*

deemed a failure to provide legal advice or assistance to others in his professional capacity as a lawyer."[56]

Needless to say, we are unconvinced that a project attorney who is hired to conduct legal writing and research should be treated differently from an associate or paralegal employed full time by a law firm and assigned the same tasks.

In the alternative, Francis claims the testimony from his counsel was sufficient to show the reasonableness necessary to support the entire award, including the portion attributable to the project attorney. We disagree.

Looking again to the evidence regarding attorney fees and expenses, Francis's attorney testified that she personally spent 38.4 hours working on the case at a rate of $350 per hour. That amounts to $13,440 of the requested $18,345.47, leaving $4,905.47 unaccounted for. This remaining amount aligns with counsel's estimation that the project attorney accounted for "about $5,000" of the total requested award; but nevertheless, no testimony or other evidence, such as billing records, accurately accounted for the remaining $4,905.47.

---

[56] *Id.* at 258 (punctuation omitted).

Accordingly, we agree with Alexander and Capital Gains that there was insufficient evidence to support the amount of attorney fees and expenses awarded with regard to this specific portion of the award (which again is the only portion of the attorney fees and expenses award being challenged on appeal[57]).[58] As a result, we

---

[57] On remand, the trial court need not reconsider the award as it concerns the $13,440 attributable to counsel's personal work on the case. *See supra* note 51.

[58] *See Driver v. Sene*, 327 Ga. App. 275, 279 (4) (758 SE2d 613) (2014) ("[W]hile the . . . attorney made a general proffer of evidence regarding the amount of fees incurred to date, she presented no billing records or other evidence showing how she had arrived at that amount. Thus, the evidence was insufficient to determine whether the attorney fees incurred or awarded were reasonable."); *cf. Fulton Cnty. Bd. of Assessors v. Greenfield Inv. Grp., LLC*, 314 Ga. App. 523, 526 (2) (724 SE2d 828) (2012) (holding there was sufficient evidence to support award when "attorney testified about his experience in tax appeals and his familiarity with the rates attorneys charge in the Atlanta area," "that he is the firm's managing partner, and his partner, who did not attend the hearing, did the majority of the work in the case," "about the reasonableness of his partner's rate, which he set," and "about the work the firm did and introduced the firm's billing records for the case"); *Santora v. Am. Combustion, Inc.*, 225 Ga. App. 771, 775 (3) (485 SE2d 34) (1997) (affirming award of attorney fees when "although some of the work billed was that of associates and paralegals, lead counsel testified on her deposition that she supervised them and had personal knowledge of and was very familiar with the work they were doing" and holding that "because the billing statements were admissible as business records, sufficient proof of the actual cost of the work performed by others in the firm was presented" and "[t]he actual cost of the legal services was therefore proved").

vacate the award of attorney fees and expenses and remand to the trial court for further evidentiary findings as to this particular aspect of the requested amount.[59]

For all these reasons, we affirm the trial court's denial of Alexander and Capital Gains's motion to open the default judgment, demand for jury trial on damages, and award of punitive damages. But we vacate the trial court's award of attorney fees and expenses of litigation and remand for further proceedings consistent with this opinion on that issue alone.[60]

*Judgment affirmed in part, vacated in part, and case remanded. Rickman and Pipkin, JJ., concur.*

---

[59] *See Driver*, 327 Ga. App. at 279-80 (4) ("When a party seeking attorney fees has failed to present an essential element of proof, but the trial court nevertheless awarded attorney fees, we have consistently reversed or vacated that portion of the judgment awarding the attorney fees and remanded the case to the trial court to hold an evidentiary hearing to allow the party, if possible, to cure the matter." (punctuation omitted)).

[60] Francis's motion for sanctions is denied.